IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ANDREW PERRONG, individually and on behalf of a class of all persons and entities similarly situated,<br><br>  Plaintiff,<br><br>vs.<br><br>NORDIC ENERGY SERVICES, LLC,<br><br>  Defendant. | Case No. 1:19-cv-06745<br><br>CLASS ACTION COMPLAINT |

**CLASS ACTION COMPLAINT**

**Preliminary Statement**

1. Plaintiff Andrew Perrong ("Plaintiff") brings this action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, a federal statute enacted in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices. *See Mims v. Arrow Fin. Servs., LLC,* 132 S. Ct. 740, 745 (2012).

2. In violation of the TCPA, Nordic Energy Services, LLC ("Nordic") hired a telemarketing company who made a pre-recorded telemarketing call to a telephone number of Mr. Perrong for which he is charged for the call for the purposes of advertising Nordic electric services using an automated dialing system, which is prohibited by the TCPA.

3. The Plaintiff never consented to receive the call, which was placed to him for telemarketing purposes. Because telemarketing campaigns generally place calls to hundreds of thousands or even millions of potential customers *en masse*, the Plaintiff brings this action on behalf of a proposed nationwide class of other persons who received illegal telemarketing calls from or on behalf of Defendant.

4. A class action is the best means of obtaining redress for the Defendant's wide-scale illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

**Parties**

5. Plaintiff Andrew Perrong is a Pennsylvania resident.

6. Defendant Nordic Energy Services, LLC is an Illinois limited liability company and a resident of this district with its principal place of business in Oakbrook Terrace, Illinois. The Defendant has a Registered Agent of Christopher D. Schuering, 506 Vermont Street, Quincy, Illinois 62301.

**Jurisdiction & Venue**

7. The Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because the Plaintiff's claims arise under federal law.

8. Nordic regularly engages in business in this district, including making telemarketing calls into this district and soliciting business from this district for its regionalized energy programs.

9. Venue is proper under 28 U.S.C. § 1391(b)(1) and(2) because a substantial part of the events or omissions giving rise to the claim occurred in this district, as the telemarketing calls to the Plaintiff were sent from this district, and because the Defendant resides in this district.

**The Telephone Consumer Protection Act**

10. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing … can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

<u>The TCPA Prohibits Automated Telemarketing Calls</u>

11. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service … or any service for which the called party is charged for the call." *See* 47 U.S.C. § 227(b)(1)(A)(iii). The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A). *See* 47 U.S.C. § 227(b)(3).

12. The TCPA also makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party." *See* 47 U.S.C. § 227(b)(1)(B).

13. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

14. The FCC also recognized that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

15. In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers, numbers for which the called party is charged for the call, and residential lines. Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]"

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,* 27 FCC Rcd. 1830, 1844 (2012) (footnotes omitted).

The Growing Problem of Automated Telemarketing

16. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting Off Robocalls* (July 22, 2016), https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls (statement of FCC chairman).

17. "The FTC receives more complaints about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Tel. Consumer Protection Act of 1991*, Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016), https://www.ftc.gov/policy/advocacy/advocacy-filings/2016/06/ftc-staff-comment-federal-communications-commission-rules.

18. In fiscal year 2017, the FTC received 4,501,967 complaints about robocalls, compared with 3,401,614 in 2016. Federal Trade Commission, *FTC Releases FY 2017 National Do Not Call Registry Data Book and DNC Mini Site* (Dec. 18, 2017), https://www.ftc.gov/news-events/press-releases/2017/12/ftc-releases-fy-2017-national-do-not-call-registry-data-book-dnc.

19. *The New York Times* recently reported on the skyrocketing number of robocall complaints and widespread outrage about illegal telemarketing. Tara Siegel Bernard, *Yes, It's Bad. Robocalls, and Their Scams, Are Surging*, N.Y. Times (May 6, 2018), https://www.nytimes.com/2018/05/06/your-money/robocalls-rise-illegal.html; *see also* Katherine Bindley, *Why Are There So Many Robocalls? Here's What You Can Do About Them*, Wall St. J. (July 4, 2018), https://www.wsj.com/articles/why-there-are-so-many-robocalls-heres-what-you-can-do-about-them-1530610203.

20. Industry data shows that the number of robocalls made each month increased from 831 million in September 2015 to 4.7 billion in December 2018—a 466% increase in three years.

21. According to online robocall tracking service "YouMail," 5.2 billion robocalls were placed in March 2019 at a rate of 168.8 million per day. www.robocallindex.com (last visited Apr. 9, 2019). YouMail estimates that 2019 robocall totals will exceed 60 billion. *See id.*

22. The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data (last visited Apr. 15, 2019).

**Factual Allegations**

23. Nordic is a competitive/alternative electric generation supplier that attempts to sell their deregulated services to residents of Illinois, Indiana, Maryland, Michigan, New Jersey, Ohio, and Pennsylvania.

24. To generate business of its electric services, Nordic relies on telemarketing.

25. In fact, Nordic previously settled a complaint for $310,800 with the Illinois Commerce Commission related to its telemarketing tactics.

26. However, Nordic's contact with the potential new customers is limited, and the telemarketing is often conducted by third parties in an effort to avoid liability.

27. One of Nordic's strategies for telemarketing involves these third parties using an automatic telephone dialing system ("ATDS") and pre-recorded messages to solicit business.

28. Nordic engages this use of this equipment and the technology because it allows for thousands of automated calls to be placed at one time, but its telemarketing representatives, who are paid by the hour, only talk to individuals who pick up the telephone.

29. Through this method, Nordic shifts the burden of wasted time to the consumers it calls with unsolicited messages.

The Call to Mr. Perrong

30. Plaintiff Perrong is a "person" as defined by 47 U.S.C. § 153(39).

31. Plaintiff's telephone number is (215) 725-XXXX.

32. Mr. Perrong has listed that number on the National Do Not Call Registry.

33. Mr. Perrong has listed that number on the Pennsylvania Do Not Call List.

34. That number is assigned to a service that charges the Plaintiff for each call received.

35. The Plaintiff received a call on September 30, 2019.

36. The Plaintiff was charged for that call.

37. The call was a pre-recorded message that promoted energy services.

38. The call did not mention the Plaintiff's name and was not personalized in any way, instead using generic terms intended for a mass audience.

39. In fact, the recording advised the Plaintiff that the call was coming from an "account manager" for "Energy."

40. The recorded message continued to advertise that the Plaintiff could save money on his energy plan.

41. This type of computer dialing demonstrates that the dialing system at issue has present capacity to generate random or sequential numbers because the dialer is not ready to have the call recipient talk to someone when he answers while it is stopping its output of generation of numbers.

42. In fact, the use of a pre-recorded message further demonstrates that the dialing system at issue has present capacity to generate random or sequential numbers, as it would be illogical to hand-dial and play messages to thousands of numbers simultaneously.

43. The pre-recorded message provided a number to call, 888-399-2771.

44. A number of people have complained about interactions with that number, believed to be owned and operated by the John Doe Corporation:

> These are a lead generation company that present themselves as "Energy" in Wisconsin that are trying to switch your electric or gas supplier to another one. They will not present their actual information to you or what lead generation company they work for. They make money off of commission if you change your electric or gas company to one that they are selling. They are very shifty and won't hesitate to hang up on you, and do call people on the DO NOT CALL list.
>
> Called both my Primary and Secondary Line with the same message indicating they were notified by my Utility Company. However I have never given my Secondary Number to "any" Utility Company, which means they are just randomly dialing numbers. Both Lines of course are on the National Do Not Call List which someone above also indicated they Violate.

*See* https://800notes.com/Phone.aspx/1-888-399-2771 (last visited Oct. 3, 2019, archived at https://archive.is/8j930).

45. The company was not identified through its Caller ID or at any point during the telemarketing call, so the Plaintiff called back the number and went through the telemarketing process so he could identify the company.

46. The Plaintiff identified Nordic because he received a verification that it was Nordic calling from a third-party verification company as part of the telemarketing pitch for the call he received.

47. Plaintiff and the other call recipients were harmed by these calls. They were temporarily deprived of legitimate use of their phones because the phone line was tied up during the telemarketing calls and their privacy was improperly invaded. Moreover, these calls injured Plaintiff and the other call recipients because they were frustrating, obnoxious, annoying, were a nuisance, and disturbed the solitude of Plaintiff and the class.

### **Nordic's Liability**

48. For more than twenty years, the FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules & Regulations Implementing the TCPA*, CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd. 12391, 12397, ¶ 13 (1995).

49. On May 9, 2013, the FCC released a Declaratory Ruling holding that a corporation or other entity that contracts out its telephone marketing "may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers."[1]

50. In that ruling, the FCC instructed that sellers such as Nordic may not avoid liability by outsourcing telemarketing:

---

[1] *In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules*, 28 FCC Rcd 6574, 6574 (¶ 1) (2013) ("May 2013 FCC Ruling").

8

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

May 2013 FCC Ruling, 28 FCC Rcd. at 6588, ¶ 37 (internal citations omitted).

51. The May 2013 FCC Ruling held that, even absent evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls. *Id.* at 6586, ¶ 34.

52. The May 2013 FCC Ruling further clarifies the circumstances under which a telemarketer has apparent authority:

> [A]pparent authority may be supported by evidence that the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including: access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information. The ability by the outside sales entity to enter consumer information into the seller's sales or customer systems, as well as the authority to use the seller's trade name, trademark and service mark may also be relevant. It may also be persuasive that the seller approved, wrote or reviewed the outside entity's telemarketing scripts. Finally, a seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct.

*Id.* at 6592, ¶ 46.

53. By engaging a telemarketer to make calls on behalf of its agents to generate new business, Nordic "manifest[ed] assent to another person … that the agent shall act on the

9

principal's behalf and subject to the principal's control" as described in the Restatement (Third) of Agency.

54. Moreover, Nordic maintained interim control over the telemarketer's actions.

55. For example, Nordic controlled the states that it allowed the telemarketer to call.

56. Nordic also gave interim instructions to the telemarketer by providing the volume of calling and leads it would purchase.

57. The telemarketer transferred customer information directly to Nordic's third party vendor, who had the ability to bind them in contract. Thus, the company that Nordic hired has the "ability … to enter consumer information into the seller's sales or customer systems," as discussed in the May 2013 FCC Ruling. As such, the company that Nordic hired is an apparent agent of Nordic.

58. Finally, the May 2013 FCC Ruling states that called parties may obtain "evidence of these kinds of relationships … through discovery, if they are not independently privy to such information." *Id.* at 6592-593, ¶ 46. Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593, ¶ 46.

**Class Action Statement**

59. As authorized by Rule 23(b)(2) and/or 23(b)(3) of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of all other persons or entities similarly situated throughout the United States.

60. The class of persons Plaintiff proposes to represent includes:

10

Automated Telemarketing Call Class

All persons within the United States: (a) to whom Defendant and/or a third party acting on Defendant's behalf, made one or more non-emergency telephone calls; (b) to a cellular telephone number or to a number for which the recipient is charged for the call; (c) using an automatic telephone dialing system or an artificial or prerecorded voice; and (d) at any time in the period that begins four years before the date of filing this Complaint to trial.

61. Excluded from the class are the Defendant, any entities in which the Defendant has a controlling interest, the Defendant's agents and employees, any judge to whom this action is assigned, and any member of the judge's staff and immediate family.

62. The proposed class members are identifiable through phone records and phone number databases.

63. The potential class members number in the thousands, at least. Individual joinder of these persons is impracticable.

64. Plaintiff is a member of the proposed class.

65. There are questions of law and fact common to Plaintiff and to the proposed class, including but not limited to the following:

    a. Whether Nordic is vicariously liable for the calls at issue;

    b. Whether the telemarketing calls were placed without obtaining the recipients' valid prior express written consent; and

    c. Whether the Plaintiff and the class members are entitled to statutory damages because of Nordic's actions.

66. Plaintiff's claims are based on the same facts and legal theories as the claims of all class members and therefore are typical of the claims of class members, as the Plaintiff and class members all received telephone calls through the same automated telemarketing process.

11

67. Plaintiff is an adequate representative of the class because his interests do not conflict with the interests of the class, he will fairly and adequately protect the interests of the class, and he is represented by counsel skilled and experienced in class actions, including TCPA class actions.

68. Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of class members, which will be ascertainable from records maintained by Nordic and/or its agents.

69. The likelihood that individual class members will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case, and given the small recoveries available through individual actions.

70. Plaintiff is not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

## Legal Claims

### Count One:
### Violations of the TCPA, 47 U.S.C. § 227(b)

71. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

72. The foregoing acts and omissions of Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, with an ATDS to a telephone line of the Plaintiff and to a number for which the party is charged for the call.

73. As a result of Defendant's and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf's violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the class presumptively are entitled to an award of $500 in damages for each and every call made.

74. Plaintiff and members of the class are also entitled to and do seek injunctive relief prohibiting Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf from making calls, except for emergency purposes, with an ATDS, absent an emergency circumstance, in the future.

75. The Defendant's violations were negligent, willful, or knowing.

## Relief Sought

For himself and all class members, Plaintiff requests the following relief:

A. Certification of the proposed class;

B. Appointment of Plaintiff as representative of the class;

C. Appointment of the undersigned counsel as counsel for the class;

D. A declaration that Defendant and/or its affiliates, agents, and/or other related entities' actions complained of herein violate the TCPA;

E. An order enjoining Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf from making calls, except for emergency purposes, using an ATDS;

F. An award to Plaintiff and the class of damages, as allowed by law;

G. Leave to amend this Complaint to conform to the evidence presented at trial; and

H. Orders granting such other and further relief as the Court deems necessary, just, and proper.

**Plaintiff requests a jury trial as to all claims of the complaint so triable.**

Dated: October 11, 2019

PLAINTIFF,
By his attorneys,

**/s/ Brian K. Murphy**
Brian K. Murphy (6225697)
Jonathan P. Misny
Murray Murphy Moul + Basil LLP
1114 Dublin Road
Columbus, OH  43215
(614) 488-0400
(614) 488-0401 facsimile
murphy@mmmb.com
misny@mmmb.com

Lauren E. Urban (6293832)
2425 N. Spaulding Ave., Floor 2
Chicago, IL 60647
(419) 344-1146
lauren.elizabeth.urban@gmail.com

Anthony I. Paronich
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
(508) 221-1510
anthony@paronichlaw.com

14